UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Domino LLC, | 2:25-cv-12895-DCN |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CBRE, Inc., | |
| Defendant. | |

Plaintiff Domino LLC, by and through its undersigned attorneys, submits this Complaint and alleges as set forth below.

## INTRODUCTION

This is a simple lawsuit. Plaintiff Domino LLC owns real estate. Defendant CBRE is a licensed real estate office that is marketing Domino's real estate *without Domino's consent*. Domino does not want CBRE to market or otherwise offer to sell Domino's property. Domino has requested that CBRE stop. However, CBRE will not stop—it stands to make a huge amount of money should the property sell, and it has refused to honor Domino's request to stop marketing Domino's property. Accordingly, Domino has filed this lawsuit seeking a Court order stopping CBRE from trying to arrange a sale of Domino's property without Domino's permission.

## I. PARTIES

1. Domino LLC ("Domino") is a South Dakota limited liability company, with its principal place of business located in St. Petersburg, Pinellas County, Florida, and doing business in the District of South Carolina. Domino has one member: Thompson Whitney Blake Company, LLC, which is 100% owned by Thompson Blake, a Florida resident.

2. Domino is the fee simple owner of Apartment No. 7-A (the "Domino Unit"), within the Dockside Horizontal Property Regime (the "Condominium"), located at 330 Concord Street, Charleston, South Carolina 29401; the Domino Unit is identified in the title to real estate recorded in Book 1327, at Page 763, in the Office of the Charleston County Register of Deeds.

3. CBRE, Inc. ("CBRE") is a Delaware corporation with its principal place of business located in Dallas, Texas, doing business in the District of South Carolina as a commercial real estate services and investment firm, and licensed with the South Carolina Real Estate Commission as a Real Estate Office.

## II. JURISDICTION AND VENUE

4. This action concerns Domino's ownership of the real estate that is the Domino Unit, and CBRE's unlawful actions pertaining to Domino's ownership. The Domino Unit is located within this district, and CBRE's unlawful actions pertaining to it have taken place within this district.

5. Pursuant to 28 U.S.C. § 1332(a)(1), this Court possesses jurisdiction over this cause because the parties are diverse in that they are citizens of different states

(Domino being a South Dakota limited liability company with its principal place of business in Florida and having its sole member in Florida, and CBRE being a Delaware corporation with its principal place of business in Texas), and the amount in controversy exceeds $75,000, as the unauthorized listing activities affect property with a value far exceeding $75,000.

6. Pursuant to 28 U.S.C. § 1391, venue is proper in the District of South Carolina because a substantial part of the events giving rise to the claims put forth herein occurred in the District of South Carolina, specifically the unauthorized listing and marketing of the real property located at 330 Concord Street, Charleston, South Carolina.

### III.  FACTUAL BACKGROUND

**A.     Domino's Ownership of Apartment No. 7-A and Common Elements**

7. The Condominium is a waterfront high-rise condominium built in 1976, located on the peninsula of historic downtown Charleston, overlooking the Cooper River, containing 133 individual condominium and townhome units, as established pursuant to the South Carolina Horizontal Property Act, as amended, by a Master Deed dated March 10, 1976 and recorded in the Office of the Register of Deeds for Charleston County, South Carolina on May 25, 1976, in Book X-108 at Page 204 (as amended).  The City of Charleston has deemed the Condominium unlivable and directed all residents to evacuate.

8. On July 24, 2025, Domino purchased and took title to the Domino Unit.

9. Domino owns the Domino Unit in fee simple.

10. A true and correct copy of Domino's deed is attached hereto as <u>Exhibit 1</u> and is incorporated herein by reference.

11. Domino's real estate title to the Domino Unit includes an appurtenant, undivided ownership interest in the Condominium's common elements.

**B.     CBRE's Unauthorized Listing Activities**

12. There is no relationship, contractual or otherwise, between CBRE and Domino.

13. Without authorization from Domino, and without any written listing agreement with Domino, CBRE began marketing, advertising, and offering for sale the <u>entire</u> Dockside Condominium building, which <u>includes</u> the Domino Unit and its appurtenant undivided interest in the common elements.

14. During September 2025, CBRE released a preliminary offering document titled "Coming to Market: Legacy Waterfront Property on Historic Charleston Harbor" that markets the <u>entire</u> 3.3-acre Dockside property, <u>including</u> the entire Condominium building containing the Domino Unit and the common elements.

15. On September 15, 2025, CBRE published and distributed an advertising email marketing the Condominium to prospective buyers, containing photographs of the Condominium and other details concerning the property owned in part by Domino.

16. CBRE's preliminary offering documents state that CBRE is offering for sale the "Legacy Waterfront Property on Historic Charleston Harbor" which includes

the "Dockside Condominium Building" at 330 Concord Street, and that "Ownership is currently entertaining offers."

17. CBRE's marketing materials represent that the entire property is "Offered As-Is, Where-Is" and that "Buyer will be responsible for demolition and removal of all existing buildings," despite having no authority from Domino to make such representations regarding Domino's property.

**C.    Demand to Cease and Desist**

18. On October 2, 2025, Domino's counsel sent CBRE a cease-and-desist letter demanding that CBRE immediately cease and desist from listing, marketing, advertising, or otherwise offering for sale the Domino Unit portion of the building.

19. Among other legal problems, South Carolina law forbids CBRE from advertising, marketing, or offering for sale Domino's real estate, because there is no written listing agreement between Domino and CBRE:

> A licensee may <u>not</u> <u>advertise, market, or offer to conduct a real estate transaction</u> involving real estate owned, in whole or in part, by another person <u>without first obtaining a written listing agreement between the property owner</u> and the real estate firm with whom the licensee is associated.

S.C. Code § 40-57-135(E)(1) (underlining added).

20. The cease-and-desist letter specifically demanded that CBRE: (a) cease and desist from all unauthorized listing activities that encompass the Domino Unit; (b) remove and retract all marketing materials that encompass the Domino

Unit; and (c) confirm in writing within five days that it had ceased all unauthorized activities.

21. CBRE has failed to comply with these demands and continues its unauthorized advertising, marketing, and offering activities.

## IV. CAUSES OF ACTION

### COUNT I
### UNFAIR TRADE PRACTICES

22. Domino re-incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

23. CBRE's unauthorized listing and marketing activities constitute unfair or deceptive acts or practices in commerce.

24. CBRE has misrepresented its authority to market and sell property owned by Domino, creating consumer confusion and unfair competition. Moreover, such misrepresentations are deceptive and in violation of (*inter alia*) South Carolina laws intended to protect the public, such as S.C. Code § 40-57-135(E)(1).

25. These acts and practices violate South Carolina's Unfair Trade Practices Act, S.C. Code § 39-5-10 *et seq*.

26. These activities and practices affect the public interest in that, *inter alia*, CBRE is making repeated false statements to the general public about its ability to market and sell Domino's property, when in fact CBRE has no authority to do so.

27. Stopping real estate agents or brokers from marketing properties without a

listing agreement affects the public interest by protecting property rights, ensuring only authorized representatives advertise and sell property, preventing fraud and misrepresentation, supporting market stability and fair competition, and providing clear safeguards for both owners and buyers in South Carolina's real estate industry.

28. CBRE's actions are willful or knowing, including because CBRE knew or should have known that it cannot market property without the owner's consent and a valid listing agreement signed by the owner of the Domino Unit. Moreover, Domino notified CBRE of the unauthorized actions and requested that CBRE cease and desist, but CBRE failed to do so.

29. As a result of CBRE's unfair trade practices, Domino has suffered actual damages and is entitled to treble damages and attorney's fees.

## COUNT II
## SLANDER OF TITLE

30. Domino re-incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein.

31. By marketing and offering for sale the entire Dockside building—including the Domino Unit—without authority from Domino, CBRE has published false statements concerning Domino's title to Apartment No. 7-A and the common elements.

32. Specifically, CBRE has represented to the public that it has authority to sell the entire building "As-Is, Where-Is" and that buyers would be responsible for "demolition and removal of all existing buildings," despite having no such

authority over Domino's property.

33. CBRE's false statements were derogatory to Domino's title and were made intentionally and/or with reckless disregard for Domino's real property rights.

34. CBRE's false statements were made without legal justification, including because South Carolina Code § 40-57-135(E)(1) prohibits a real estate agency from advertising, marketing, or offering to conduct a real estate transaction "involving real estate owned, in whole or in part, by another person without first obtaining a written listing agreement between the property owner and the real estate brokerage firm with whom the licensee is associated."

35. CBRE's false statements cast doubt upon Domino's title to Apartment No. 7-A and the common elements, and they diminish its quality, condition, and value.

36. CBRE's improper actions have caused special damages to Domino, including (*inter alia*) impairment of vendibility of the property and the need for litigation to remove doubt cast on vendibility of the property after CBRE disregarded Domino's request to cease-and-desist.

37. As a direct and proximate result of CBRE's false statements, Domino has suffered damages, including without limitation harm to the marketability and value of its property and derogation of its real estate title.

**REQUEST FOR INJUNCTIVE AND/OR DECLARATORY RELIEF**

38. Domino re-incorporates by reference the allegations contained in the paragraphs above as though fully set forth herein. To the extent necessary, Domino further seeks relief pursuant to 28 U.S.C. § 2201 *et seq.*, Fed. R. Civ. P.

57, 65, and SC Code Ann. § 15-53-10 *et seq*.

39. Domino has a substantial likelihood of success on the merits of its claims against CBRE in that there is no reasonable dispute that CBRE is marketing Domino's real property without permission from Domino.

40. Domino will suffer irreparable harm if CBRE is not enjoined from its unauthorized activities, including:

    A. Continued interference with Domino's exclusive property rights;

    B. Ongoing misrepresentation of authority over Domino's property;

    C. Potential liability exposure from third-party dealings based on CBRE's unauthorized representations;

    D. Harm to property value and marketability that cannot adequately be compensated by monetary damages alone.

41. The balance of equities weighs heavily in Domino's favor, as CBRE has no legitimate interest in marketing property it does not own or have authority to represent.

42. An injunction would serve the public interest by preventing unauthorized real estate marketing activities that violate state licensing laws and protecting property owners' rights.

43. Domino has no adequate remedy at law, as monetary damages cannot fully compensate for the ongoing interference with property rights and unauthorized representations being made to the public.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that judgment be entered against Defendant on all causes of action, and that this Court:

1. Issue a temporary restraining order and preliminary injunction immediately restraining and enjoining CBRE, its agents, employees, successors, and assigns from:

    A. Listing, marketing, advertising, or otherwise offering for sale Unit 7-A or any portion of the Dockside building that includes Unit 7-A or its appurtenant interests;

    B. Making any representations regarding authority to sell Unit 7-A or its appurtenant interests;

    C. Distributing any marketing materials that reference or include Unit 7-A or its appurtenant interests;

2. Issue a permanent injunction with the same terms as set forth above;

3. Issue a declaratory judgment with the same terms as set forth above;

4. Order CBRE to remove and retract all existing marketing materials, listings, and advertisements that reference Unit 7-A or represent authority to sell the entire Dockside building;

5. Award Domino actual damages in an amount to be proven at trial;

6. Award treble damages pursuant to applicable unfair trade practices statutes;

7. Award Domino its reasonable attorney's fees and costs;

8. Award prejudgment interest; and

9. Grant such other and further relief as this Court deems just and proper.

Plaintiff requests a trial by jury.

Respectfully submitted,

FORD WALLACE THOMSON LLC


s/ Ian S. Ford
Ian S. Ford
   Fed. Bar No. 9057
   Ian.Ford@FordWallace.com
Ainsley F. Tillman
   Fed. Bar No. 12847
   Ainsley.Tillman@FordWallace.com
715 King Street, Charleston, SC  29403
(843) 277-2011
www.FordWallace.com

*Attorneys for Plaintiff*


Charleston, South Carolina
October 9, 2025